**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                **Plaintiff,**

      **-against-**                                **1:24-cr-079 (ALC)**

                                                                       **OPINION AND ORDER**

**SEAN WELCH,**

                **Defendant.**
_____

**ANDREW L. CARTER JR., United States District Judge:**

        Defendant Sean Welch is charged with wire fraud in violation of 18 U.S.C. § 1343.

Defendant now moves to suppress all evidence obtained as a result of allegedly deficient

warrants to search and seize Defendant's (1) Samsung Galaxy cellphone; (2) Blackberry device;

and (3) Microsoft tablet.  For the reasons set forth below, Defendant's motion to suppress the

challenged evidence is hereby **DENIED**.

## BACKGROUND

        Defendant served as a business manager for musical artists and other professionals

involved in the music industry from approximately 2018 through 2022.  *See* ECF No. 2,

Unsealed Indictment ("Indictment") ¶ 1.  During this time, Defendant had access to clients' bank

accounts.  *Id.* ¶ 2.  Defendant is alleged to have carried out a scheme to use his access to these

bank accounts to steal approximately $855,034 from three different victims, including by

electronically transferring funds from his clients' accounts to his own bank accounts (the

"Scheme").  *Id.* ¶¶ 2–3.  On or about February 14, 2024, a grand jury returned an indictment

charging Defendant with one count of violating 18 U.S.C. § 1343.  *See* ECF No. 28-1, Decl. ISO

Mot., Ex. A at 5.  On or about February 14, 2024, an arrest issue was issued for Defendant and on or about April 17, 2024, Defendant was arrested.  *Id.* at 5–6.

On May 2, 2024, the Government applied for a search warrant for Defendant's electronic devices.  *Id.* at 2–17.  The application was supported by an affidavit submitted by Special Agent Aristotelis Kougemitros.  *Id.* at 2–9.  The affidavit stated that there was probable cause that Defendant committed the subject offense—wire fraud—and incorporated the Indictment by reference.  *Id.* at 5.  The affidavit also stated that there was probable cause that three of Defendant's devices that were seized at the time of his arrest—a Samsung Galaxy cellphone, a Blackberry device, and a Microsoft tablet (together, the "Devices")—would contain evidence of the Scheme.  *Id.* at 5–6.  In making his affidavit, Kougemitros relied in part on his experience and training, as well as his participation in the investigation, his communication with victims, and his review of law enforcement records and reports.  *Id.* at 3, 5–7.  Kougemitros noted that he "kn[e]w that individuals who engage in fraud schemes like the Subject Offense frequently use electronic devices, including cellular devices, to communicate with victims" *Id.* at 6.  The affidavit also refers to allegations that Defendant carried out the scheme by using online access to clients' bank accounts and that he communicated electronically with the victims—including through cellphone calls, text messages, and emails—in furtherance of the scheme.  *Id.* at 6–7.

The warrant application sought search and seizure of the devices to review electronically stored information ("ESI") constituting evidence of wire fraud during the period January 1, 2018 through December 31, 2022.  *Id.* at 8–10.  As outlined in Attachment A of the application, the following categories of ESI were sought:

1. Evidence concerning the identities and/or locations of any coconspirators in the Subject Offense;
2. Communications with the victims, such as phone calls, video calls, text messages, emails, and social media messages, and attachments thereto, calendar or

scheduling information, and/or photographs or videos, concerning the planning, execution, and aftermath of the Subject Offense;

3. Evidence concerning the planning, execution and aftermath of the Subject Offense, including communications about efforts to open bank accounts on behalf of victims and/or gain access to victims' bank accounts, transfer money out of victims' bank accounts, and evade detection.

4. Records of financial transactions related to the Subject Offense, such as records related to the electronic transfer of funds from victims' bank accounts; and

5. Evidence indicating the states of mind of the user of the Subject Devices and/or any coconspirators as they relate to the Subject offense, including evidence of motive, such as financial need or gain, any Internet searches or communications related to potential penalties, and efforts to conceal evidence or evade law enforcement.

*Id.* at 10.  On May 2, 2024, the Court issued a search warrant authorizing the search of the contents of the Devices.  *Id.* at 9.

On January 31, 2025, Defendant filed a motion (and a supporting memorandum and declaration) to suppress evidence obtained pursuant to the electronic device warrant detailed above.  ECF Nos. 27, 28, 29 (Def. Br.).  On February 28, 2025, the Government filed its opposition.  ECF No. 30 (Opp.).  On March 14, 2025, Defendant filed his reply.  ECF No. 31. ("Reply").  On April 24, 2025, the Court held oral argument on Defendant's motion to suppress. *See* 4/24/2025 Minute Entry; ECF No. 35, Oral Argument Transcript ("Tr.").

## LEGAL STANDARD

The Fourth Amendment prohibits "unreasonable searches and seizures" and requires that "no warrants shall issue, but upon probable cause, supported by Oath."  U.S. Const. amend. IV; *see also United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008).  "The Supreme Court has explained that 'probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Falso*, 544 F.3d at 117 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).  "The task of the issuing magistrate or judge is simply to make a practical, common-sense decision whether, given

all the circumstances set forth in the affidavit before [them], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Gates*, 462 U.S. at 238) (alteration, footnote, and quotation marks omitted).

An affidavit in support of a search warrant application must show "first, that a crime was committed, and second, that there is probable cause to believe that evidence of such a crime is located [in the place to be searched]." *United States v. Lustyik*, 57 F. Supp. 3d 213, 224 (S.D.N.Y. 2014) (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)). "This standard does not demand hard certainties, but it does require more than a hunch, the latter being insufficient to support even an investigative stop." *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (cleaned up). Rather, "probable cause must be grounded in sufficient facts to establish the sort of 'fair probability' on which 'reasonable and prudent men, not legal technicians'" would rely. *Id.* (citation omitted).

## DISCUSSION

The Court considers whether the warrant was deficient such that all evidence sourced form the warrant should be suppressed. Upon a finding that the warrant was supported by probable cause, was facially valid, and was executed in good faith, the Court denies Defendant's suppression motion.

### I.    The Warrant Establishes a Sufficient Nexus Between the Charged Conduct and the Devices

A search warrant must "establish[ ] a sufficient nexus between the criminal activities alleged" and the place or object to be searched. *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004); *accord United States v. Chang*, No. 18-CR-0681, 2024 WL 1308775, at *11 (E.D.N.Y. Mar. 27, 2024) (analyzing nexus in the cellphone search context). "A showing of

nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." *Singh*, 390 F.3d at 182 (cleaned up).

At least some of facts presented in a search warrant affidavit be must "particularized with respect to" the defendant in order to satisfy the nexus inquiry. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] search or seizure of a person must be supported by probable cause particularized with respect to that person.") (emphasis added); *Falso*, 544 F.3d at 124 (requiring the government to gather "evidence *particularized* to the target of the search" before the warrant application is made) (emphasis added); *cf. United States v. Coreas*, 419 F.3d 151, 156 (2d Cir. 2005) (warning that the "exercise of trying to stretch the remaining unparticularized allegations to uphold the search seems counterproductive" to a probable cause review). This maxim also applies in the cellphone search context. *See, e.g., Lauria*, 70 F.4th at 129 (reviewing the "'facts' relating specifically to [defendant] or to his [ ] cell phone" in the probable cause context).

Further, the Second Circuit considers a law enforcement agent's professional experience—either with the subject themselves or type of criminal conduct at issue—to be an "important factor" to be considered in the probable cause analysis. *See United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017) ("[W]e have recognized that a law enforcement officer's experience and training may permit the officer to discern probable cause from facts and circumstances where a layman might not.") (internal quotations omitted); *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) (noting that a "number of cases have ruled that an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application" as to good faith). The analysis must also consider inferences that can be drawn

from an agent's professional opinion, as well as the actual, particularized facts sworn in the search affidavit regarding the place or item to be searched.

However, there must still be sufficient factual matter particularized to the defendant that "nudge[s]" the officer's professional or experience-based opinion from a "hunch" or "mere suspicion" to "fair probability that contraband or evidence of a crime will be found[.]" *Lauria*, 70 F.4th at 128; *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007); *United States v. Garlick*, No. 22-CR-540, 2023 WL 2575664, at *6 (S.D.N.Y. Mar. 20, 2023). Otherwise, "[p]ermitting a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *United States v. Ukhuebor*, No. 20-MJ-1155, 2021 WL 1062535, at *3 (E.D.N.Y. Mar. 19, 2021), at *3 (quoting *United States v. Guzman*, No. 97-CR-786, 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998)) (quotation marks omitted).

Defendant principally objects to the agent affidavit's considerable reliance on the agent's training and experience, as well as its "sweeping generalizations that, by Kougemitros' own admission, apply to just about anyone." Def. Br. at 8. Defendant argues that the affidavit does not provide any specific nexus between the conduct alleged here and each of the devices searched, rendering moot the Fourth Amendment's protections against general searches.

To support its position, Defendant primarily points to cases in this district where courts have considered the extent to which an agent's training and experience can support a warrant application. In one such case, *United States v. Bertini*, the court granted a defendant's motion to suppress in part upon a finding that a supporting agent affidavit rested primarily on the agent's "hunch . . . that most people carry their cell phones most of the time, including when they

commit crimes" and which alleged no facts that the defendant used his cellphone in connection with the alleged offenses, carried a cellphone, or even had reason to use or carry his cellphone in connection with the alleged offenses. *United States v. Bertini*, No. 23-CR-61, 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023). Consequently, the court concluded that such "blanket generalizations" are "not sufficient" to determine that probable cause exists. *Id.* at *10. In another case, *United States v. Guzman*, the court similarly concluded that the affidavit lacked factual assertions connecting the place to be searched with the defendant's alleged conduct; rather, the agent's opinion was the "*only* averment linking the premises to be searched with the alleged criminal conduct." *Guzman*, 1998 WL 61850, at *2 (emphasis in original).

Defendant asks that the Court find parallels to the facts at hand, but the Court cannot do so where the agent's opinion is not the *only* fact asserted in the affidavit. Indeed, the Court finds that the affidavit contains enough additional facts as stated outright and sourced from the Indictment—which was incorporated by reference—to substantiate the warrant. For instance, the Devices are all electronic devices and—in addition to the agent's knowledge that individuals who engage in fraud schemes use electronic devices—the agent also includes allegations that Defendant communicated with the victims through electronic means. Moreover, it is also alleged that Defendant transferred his clients' funds to his own bank accounts using online access to their bank accounts. Taking together the agent's opinion and the particular facts alleged, nexus can be reasonably inferred. *Singh*, 390 F.3d at 182.

The Court also considers whether the warrant is inadequate on the basis that the Government sought a subcategory of evidence concerning the identities and/or locations of any potential co-conspirators despite the absence in the Indictment of any allegations that Defendant conspired with others. Here, Defendant cites *Bertini* again, this time for the proposition that

when no conspiracy is charged, a warrant's reference to co-conspirators undermines the validity of the warrant.  *See* Def. Br. at 9–10; *Bertini*, 2023 WL 8258334 at *8.  In that case, it was the agent's opinion that individuals who conspire to commit bank robberies (bank robbery was the alleged subject offense) use their cellphones to communicate with co-conspirators, thereby supporting a theory that the defendant used his phone in the offense.  *Bertini*, 2023 WL 8258334 at *7–8.  However, no conspiracy was charged in *Bertini*, leading the court to find that the agent's references to a conspiracy were not only inapplicable but also evinced "[t]he affidavit's reliance on circumstances that are not present [in the case]" thereby "run[ning] afoul of the Supreme Court's admonition that a showing of probable cause must be premised on 'particularized' facts rather than irrelevant generalizations."  *Id.* at *8–9 (citing *Ybarra*, 444 U.S. at 91).

Although the agent affidavit in this case refers to the possibility that evidence of a conspiracy can be found on the Devices, the affidavit does not improperly rely on generalizations of conspiratorial conduct to establish probable cause.  Rather, the agent's affidavit alleges sufficient facts and opinions as to Defendant's commission of the subject offense—and not a broader conspiracy—to establish probable cause that the Devices contain evidence of criminal activity.  To the extent that the inclusion of this subcategory of evidence amounts to a deficiency, the Court is not persuaded that it is a fatal one because the affidavit otherwise avers enough facts and inferences supporting probable cause.

## II.  The Warrant Was Not Facially Valid

Defendant also challenges the scope of the warrant on its face, arguing that it lacked particularity and was overbroad, rendering it invalid.

### a.  The Warrant Was Sufficiently Particularized

"[T]he Fourth Amendment provides that 'a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)). "Courts implement the particularity requirement by insisting that warrants not 'leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized.'" *United States v. Zemlyansky*, 945 F.Supp.2d 438, 453 (S.D.N.Y. 2013) (quoting *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990) (citations omitted)).

"To satisfy the Fourth Amendment's particularity requirement, a warrant must meet three criteria: (1) it must identify the specific offense for which the police have established probable cause; (2) it must describe the place to be searched; and (3) it must specify the items to be seized by their relation to designated crimes." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) (quoting *Galpin*, 720 F.3d at 445–46) (cleaned up).

Defendant contends that the warrant does not describe the alleged criminal conduct at all or specify the victims of the alleged crimes, resulting in a warrant that does not "tell[] the searching officers for what crime the search is being undertaken." Def. Br. at 11; *Zemlyansky*, 945 F. Supp. 2d at 453. Moreover, Defendant holds that a warrant is not valid even if it attaches the affidavit supporting the warrant application and cites the requirement that "for an attached affidavit properly to be incorporated into a warrant, the warrant must contain 'deliberate and unequivocal language of incorporation.'" *In re 650 Fifth Avenue and Related Properties*, 830 F.3d 66, 100 (2d Cir. 2016) (citation omitted).

At oral argument, counsel for Defendant explained that the warrant—which did not specifically reference the agent affidavit in support of the warrant application—was so lacking in particular details that law enforcement was unrestrained by any guardrails in the search of the

Devices. *See* Tr. 8:9–17. The Government contested whether the affidavit needed to be attached to the warrants themselves, arguing that the cases cited by Defendant on this issue were inapposite because they addressed warrants that did not otherwise list the subject offenses and, moreover, that investigating officers in practice rely on the affidavit and the background of the case in their search. *Id.* 4:17–25; 16:11–18.

The Court concludes that the warrant is particularized on its face because it specifies wire fraud as the subject offense for which probable cause has been established and it identifies the three Devices to be searched. *See* ECF No. 28-2, Decl. ISO Mot., Ex. B at 4. The Court disagrees that the holdings in the cases submitted by Defendant on this point demand more from the warrant in this case. In *In re 650 Fifth Avenue*, the court held that "[l]anguage in a warrant that simply references an underlying affidavit does not incorporate the affidavit so as to allow the documents together to satisfy the particularity requirement." 830 F.3d at 100 (citing *Groh v. Ramirez*, 540 U.S. 551, 554–55 (2004)). However, in that case, the court was concerned with the general applicability of a warrant that ostensibly relied on supporting materials, but nonetheless failed to specify: the crimes at issue; the categories of information for which there was probable cause to seize; or the temporal scope of the materials sought. *Id.* But the warrant in the instant case does not suffer from the same deficiencies, so the Court need not weigh the validity of reliance on any supporting materials in dealing with the particularity question.

In another case relied upon by Defendant, *United States v. Rosa*, the court concluded that a warrant that did not specify a specific crime could not be cured with reliance on supporting materials. *United States v. Rosa*, 626 F.3d 56, 62–63 (2d Cir. 2010); *see also United States v. George*, 975 F.2d 72, 76 (2d Cir.1992) ("Mere reference to 'evidence' of . . . general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to

seize. . . . [A]uthorization to search for 'evidence of a crime,' that is to say, any crime, is so broad as to constitute a general warrant."). Unlike *Rosa*, where neither the nature of the criminal activity nor the devices to be searched were specified, the warrant in the instant case contained enough information for the officers to conduct a sufficiently tailored search of the Devices without running afoul of the Fourth Amendment.

### b. The Warrant Was Not Overbroad

"[A] warrant is overbroad if its 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'" *Lustyik*, 57 F.Supp.3d at 228 (quoting *Galpin*, 720 F.3d at 446). "In determining whether a warrant is overbroad, courts must focus on 'whether there exists probable cause to support the breadth of the search that was authorized.'" *Zemlyansky*, 945 F.Supp.2d at 464 (quoting *United States v. Hernandez*, No. 09-CR-625, 2010 WL 26544, at *8 (S.D.N.Y. Jan. 6, 2010)).

Defendant takes issue with the breadth of the subcategories of ESI sought by the warrant, which he construes as "catch-all" categories without a sufficient connection to the suspected criminal activity or any meaningful limit. In the previous section, the Court found that the warrant relayed sufficient information to law enforcement and, similarly here, the Court finds that the subcategories sufficiently connect the evidence sought with the alleged offense. To the extent the subcategories are broad, the "complexity and scope of defendant's alleged crimes [justify] the broad nature of the warrants at issue." *See United States v. Jacobson*, 4 F. Supp. 3d 515, 524 (E.D.N.Y. 2014); *see also United States v. Levy*, No. S511–CR–62, 2013 WL 664712, at *2–3 (S.D.N.Y. Feb. 25, 2013) (holding that a warrant authorizing the seizure of "[e]vidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1343 (Wire Fraud), 1349 (Conspiracy to Commit Wire Fraud), and 1956 and 1957 (Money Laundering)" and

containing an illustrative list of items, including business records, computers, and "electronic data storage devices," was sufficiently particular).

Defendant also takes issue with the temporal scope of the warrant—January 1, 2018 through December 31, 2022—arguing that there is no probable cause for such an extensive period when the first allegation in the indictment occurred in July 2018 and the final allegation occurred in March 2022. *See* Indictment ¶¶ 4, 16. Defendant cites *United States v. Hickey* for the proposition that the documents sought by the warrant pre-dated and post-dated the periods of the alleged conduct, thereby supporting the defendant's arguments as to overbreadth. *United States v. Hickey*, 16 F. Supp. 2d 223, 239 (E.D.N.Y. 1998). However, the warrant at issue in *Hickey* contained *no* time constraints. *Id.* Here, the parameters are justified in light of the complexity of the scheme and the Court does not consider the inclusion of a few months before and after the acts alleged in the indictment to be unduly invasive. *See United States v. Elkorany*, No. 20-CR-437, 2021 WL 3668086, at *4 (S.D.N.Y. Aug. 17, 2021) (where defendant was alleged to have committed multiple druggings and assaults over several years, "the Government need not have limited their search strictly to the date of the first known assault"); *United States v. Blakstad*, No. 19-CR-486, 2020 WL 5992347, at *9 (S.D.N.Y. Oct. 9, 2020) (warrants were not overbroad when they authorized a search of email accounts "approximately 15 months before the first allegedly unlawful transaction"). The Court concludes that the warrant was therefore not overbroad.

### III.    The Good Faith Exception Applies

Notwithstanding the Court's analysis above, the good faith exception to the exclusionary rule would still apply. The good faith exception to the exclusionary rule does not apply "(1) where the issuing [judge] has been knowingly misled; (2) where the issuing [judge] wholly

abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient [such as by failing to particularize the place to be search or the things to be sized] that reliance upon it is unreasonable." *Falso*, 544 F.3d at 125.(citing *United States v. Moore*, 968 F.2d 216, 222 (2d Cir.1992); *United States v. Leon*, 468 U.S. 897, 922–23 (1984)).

Defendant argues that the exception does not apply here because the "bare bones" affidavit in support of the warrant application lacks any indicia of probable cause rendering the warrant facially deficient. In the absence of any allegations of misconduct and, largely for the reasons stated above, the Court concludes that the warrant application at issue in this case—even if it could have been said to be lacking with respect to probable cause—does not totally lack indicia of probable cause such that the warrant offends the good faith exception.

## CONCLUSION

For the reasons set forth above, Defendant's motion to suppress evidence is DENIED. The Clerk of Court is respectfully directed to terminate ECF No. 27.

**SO ORDERED.**

Dated:    **May 13, 2025**
          **New York, NY**

_____
     **ANDREW L. CARTER, JR.**
     **United States District Judge**